**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1331

ROBERT G. MARCELLUS; DAVID WILLIAMS; BARRY HODGE; TIMOTHY GRESHAM; POWHATAN COUNTY REPUBLICAN COMMITTEE,

Plaintiffs - Appellants,

v.

VIRGINIA STATE BOARD OF ELECTIONS; JAMES B. ALCORN, in his official capacity as a member and Chairman of the Virginia State Board of Elections; CLARA BELLE WHEELER, in her official capacity as a member and Vice Chair of the Virginia State Board of Elections; SINGLETON B. MCALLISTER, in her official capacity as a member and Secretary of the Virginia State Board of Elections,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. M. Hannah Lauck, District Judge. (3:15-cv-00481-MHL)

Argued: December 7, 2016                           Decided: February 21, 2017

Before NIEMEYER, TRAXLER, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Traxler and Judge Harris joined.

**ARGUED:** Patrick Michael McSweeney, MCSWEENEY, CYNKAR & KACHOUROFF, PLLC, Powhatan, Virginia, for Appellants. Joshua D. Heslinga, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Mark R. Herring, Attorney General of Virginia, Cynthia Hudson, Chief Deputy Attorney General, John W. Daniel II, Deputy Attorney General, Heather Hays Lockerman, Senior Assistant Attorney General, Anna T. Birkenheier, Assistant Attorney General, Stuart A. Raphael, Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

NIEMEYER, Circuit Judge:

The Powhatan County Republican Committee and four individuals nominated by the Committee to be candidates for election to the Board of Supervisors for Powhatan County, Virginia, commenced this action against the Virginia State Board of Elections to challenge the constitutionality of the portion of Virginia Code § 24.2-613(B) that provides that only candidates in elections "for federal, statewide, and General Assembly offices" may be identified on the ballot by the name of the political party that nominated them or by the term "Independent." The plaintiffs allege that providing political party identifiers for candidates for federal, statewide, and General Assembly offices, while denying such ballot identifiers for candidates for all local offices, violates their right of association protected by the First and Fourteenth Amendments and their right to equal protection under the Fourteenth Amendment.

On cross-motions for summary judgment, the district court entered judgment in favor of the Virginia State Board of Elections, upholding the constitutionality of the challenged portion of § 24.2-613(B), and we affirm. We conclude that the burden on associational rights imposed by Virginia's regulation of the use of party identifiers on official ballots is at most minimal and is amply justified by Virginia's important interests, which include minimizing partisanship at the local government level, promoting impartial governance, and maximizing the number of citizens eligible to hold local office under the Hatch Act, 5 U.S.C. §§ 7321-7326. We similarly conclude that § 24.2-613(B)'s different treatment of local candidates and federal, statewide, and General Assembly candidates

3

with respect to party identifiers on the ballot does not violate the Equal Protection Clause because such treatment is rationally related to legitimate governmental interests.

## I. Statutory Scheme

In Virginia, candidates for elected office can generally qualify to be placed on an election ballot either by filing a declaration of candidacy and a petition signed by the requisite number of qualified voters, *see* Va. Code Ann. § 24.2-506, or by receiving the nomination of a "political party," as defined by statute, *see id.* §§ 24.2-101, 24.2-511. The only organizations that currently qualify under the statute's definition are the Republican Party and the Democratic Party. *See Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 712 (4th Cir. 2016).

The form of ballots used in Virginia elections is tightly regulated by statute and by standards prescribed by the Virginia State Board of Elections. *See* Va. Code Ann. § 24.2-613(A). For example, every ballot, whether printed or presented through an approved electronic voting system, contains a header with the words "Commonwealth of Virginia" and "Official Ballot." And Virginia's regulation of the ballot extends to details such as font size and the number of characters per line. Localities are required to submit ballot proofs to the Virginia Department of Elections for verification and approval.

The ballots' content is also strictly regulated. In 1870, when Virginia formally adopted the use of written ballots, the General Assembly specified that the ballot be "a white paper ticket . . . containing . . . the names of the persons for whom the elector intends to vote, and designating the office to which each person so named[] is intended

4

by him to be chosen." An Act to Provide for a General Election, ch. 76, § 31, 1869-70 Va. Acts 78, 85. Not until 1970 did the General Assembly amplify the content to include, in connection with candidates for President, a party identifier for each candidate. *See* Act of April 3, 1970, ch. 462, § 2, 1970 Va. Acts 826, 853 ("No names of political parties shall appear on the ballot, except in presidential elections . . .."). In 2000, the General Assembly again expanded the list of offices for which party identifiers are to be used to include "federal, statewide, and General Assembly offices," but those offices "only." Act of April 6, 2000, ch. 514, § 1, 2000 Va. Acts 915, 915. While bills have been introduced since to expand further the list of offices for which identifiers are used, none has been enacted.

Thus, in its current state, Virginia Code § 24.2-613(B) provides that party identifiers are used on the ballot only in connection with candidates for President of the United States, members of the U.S. Senate, members of the U.S. House of Representatives, Governor, Lieutenant Governor, Attorney General of Virginia, members of the Senate of Virginia, and members of the Virginia House of Delegates. Conversely, § 24.2-613(B) prohibits party identifiers for candidates for all local offices, including candidates for county boards of supervisors and city and town councils; local school boards; mayors; clerks of court; Commonwealth's attorneys; sheriffs; revenue commissioners; treasurers; and soil and water conservation district directors. This restriction is imposed even though candidates for most local offices are allowed to qualify for placement on the ballot by being nominated by the local chapter of one of the major political parties. *See* Va. Code Ann. §§ 24.2-509(A), 24.2-511.

5

When including identifiers, the State Board of Elections uses the name of the political party that nominated the candidate. If the candidate qualified for the ballot by petition, the Board uses the term "Independent," unless the candidate produces "sufficient and appropriate evidence" that he or she was nominated by a "recognized political party." Va. Code Ann. § 24.2-613(B). The Board represents these identifiers on the ballot using capital letters — (D) for Democrat, (R) for Republican, (L) for Libertarian, (G) for Green, (IG) for Independent Green, (C) for Constitution, and (I) for Independent.

There is no restriction on any candidate's advertising his or her party nomination, association, or endorsement. Moreover, voters can learn which candidates were nominated by political parties on the "What is on my Ballot?" section of the Virginia Department of Elections' website.

## II. Facts

In May 2015, the Powhatan County Republican Committee nominated Robert Marcellus, David Williams, Barry Hodge, and Timothy Gresham to be Republican candidates for positions on the Powhatan County Board of Supervisors during the November 2015 general election. As provided by Virginia Code § 24.2-511(B), each of those candidates qualified to have his name appear on his local ballot after the Chairman of the Committee certified his nomination to both the Virginia State Board of Elections and the General Registrar of Powhatan County. Accordingly, the ballots for the November 3, 2015 general election included their names but not any party identifiers next to their names or, indeed, next to the names of any candidate for local office. The ballot

6

did, however, include party identifiers for candidates seeking seats in the General Assembly. Even though the 2015 general election is now passed, these four candidates state that they intend to run for local office in the future as political party nominees.

In their two-count complaint, filed in August 2015, the plaintiffs alleged that they have the right under the First and Fourteenth Amendments "to be associated on the general election ballot with the political party that nominated them to the same extent as federal, statewide, and General Assembly candidates" and that § 24.2-613(B), which denied them "the benefit of party identification," was "arbitrary, unreasonable and discriminatory" and therefore impermissibly burdened their right of association. They also alleged that § 24.2-613(B) violated their right to equal protection under the Fourteenth Amendment because they were "similarly situated" to candidates for federal, statewide, and General Assembly offices and yet were treated disparately by the statute. The plaintiffs sought a declaratory judgment that § 24.2-613(B) is invalid and an injunction requiring the Commonwealth to include party identifiers on the ballot for candidates for local offices.

On the parties' cross-motions for summary judgment, the court entered an order and memorandum opinion dated March 4, 2016, granting judgment to the Virginia State Board of Elections. With respect to its jurisdiction, the court concluded that even though the 2015 election had already taken place, the case was not moot, as the challenged action was capable of repetition, yet evading review. On the merits, the court concluded that the plaintiffs' "constitutional challenges falter no matter which test applies."

This appeal followed.

7

### III. Associational Rights

The plaintiffs argue that even though "neither political parties nor their nominees have an absolute right to placement of a party identifier on the ballot, they [do] have a First Amendment associational right to *nondiscriminatory* treatment when the government grants a privilege or benefit related to the election ballot." They claim in this case that it is the "unjustified discrimination between the statute's classifications" that defines the impermissible burden on them and their associational rights under the First Amendment. Thus, while the plaintiffs locate their claim within the First Amendment and accept the required analysis of balancing a statute's burden against its justification, they rely on equal protection principles to argue that the statute's disparate regulation of party identifiers burdens their associational rights.

The government argues that the Virginia statute imposes no burden on plaintiffs' associational rights and, alternatively, that any burden that might be identified is "easily" justified by the legitimate governmental purposes served by the statute.

It is well established that "[t]he First Amendment protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas," *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997), and that this component of the First Amendment applies to the States through the Fourteenth Amendment, *see NAACP v. Alabama*, 357 U.S. 449, 460 (1958). "It does not follow, however, that . . . the right to associate for political purposes *through the ballot* [is] absolute." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (emphasis added). Rather, "[c]ommon sense, as well as constitutional law, compels the conclusion that government

8

must play an active role in structuring elections," *id.*, even though election laws "inevitably affect[] — at least to some degree — the individual's right to vote and his right to associate with others for political ends," *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). Indeed, "[t]he States possess a 'broad power to prescribe the "Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices.'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008) (quoting *Clingman v. Beaver*, 544 U.S. 581, 586 (2005)). Nonetheless, state regulation must be exercised in a way that does not violate other specific provisions of the Constitution. *Id.*

When analyzing whether a state election law impermissibly impinges on associational rights protected by the First Amendment, we apply the framework developed by the Supreme Court in *Anderson* and *Burdick*. *See Timmons*, 520 U.S. at 358.

In *Anderson*, where the Supreme Court was considering an early filing deadline for independent candidates, the Court articulated the applicable analysis:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

9

460 U.S. at 789. And in *Burdick*, the Court built upon this framework, rejecting the argument "that a law that imposes any burden upon the right to vote must be subject to strict scrutiny." 504 U.S. at 432. Instead, as the Court explained, the "rigorousness" of the inquiry "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.* at 434. Specifically, while laws imposing "severe" restrictions must be "narrowly drawn to advance a state interest of compelling importance," *id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)), "a state election law provision [that] imposes only 'reasonable, nondiscriminatory restrictions' upon . . . First and Fourteenth Amendment rights" is generally justified by "the State's important regulatory interests," *id.* (quoting *Anderson*, 460 U.S. at 788).

Thus, when applying the *Anderson-Burdick* analysis, we consider first "the character and magnitude" of the burden that Virginia Code § 24.2-613(B) imposes on associational rights. In doing so, we observe that the statute has no effect on any candidate's ability to earn a place on the ballot. *Cf. Williams v. Rhodes*, 393 U.S. 23, 31 (1968) ("The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot . . ."). The statute also does not have any impact on any political organization's "right to choose [its] 'standard bearer' in the form of a nominee." *S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752, 756 (4th Cir. 2010) (quoting *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989)).

While the plaintiffs agree with these observations, they argue that a burden on their associational rights is imposed by § 24.2-613(B)'s creation of a distinction between candidates seeking a federal, state, or General Assembly office, whose names on the

10

ballot include identifiers, and candidates for all other offices, whose names on the ballot appear without identifiers. This argument is not unlike the one made in *Timmons*.

In *Timmons*, the Court was presented with a Minnesota law that "prohibit[ed] a candidate from appearing on the ballot as the candidate of more than one party," even though the candidate may have been nominated by more than one party. 520 U.S. at 354. In holding that the law did not violate the First and Fourteenth Amendments, the Court reasoned that while a political party — there, the "New Party" — has the right to select its own candidate, "[i]t does not follow . . . that a party is absolutely entitled to have its nominee appear on the ballot *as that party's candidate*." *Id.* at 359 (emphasis added). The New Party had argued that the law impermissibly burdened "its right . . . to communicate its choice of nominees on the ballot on terms equal to those offered other parties." *Id.* at 362. While the Court accepted that the law "prevent[ed] the New Party from using the ballot to communicate to the public that it supports a particular candidate who is already another party's candidate" and "shut[] off one possible avenue a party might use to send a message to its preferred candidate," *id.* (emphasis omitted), it was "unpersuaded" by the New Party's "contention that it has a right to use the ballot itself to send a particularized message," emphasizing that "*[b]allots serve primarily to elect candidates, not as forums for political expression*," *id.* at 363 (emphasis added).

In *Washington State Grange*, the Court relied upon *Timmons* when rejecting a First Amendment challenge brought by several political parties to a Washington statute that provided that "candidates for office shall be identified on the ballot by their self-designated 'party preference,'" regardless of whether they were nominated by the party

11

they designated. 552 U.S. at 444. Thus, under the challenged law, "[a] political party [could not] prevent a candidate who [was] unaffiliated with, or even repugnant to, the party from designating it as his party of preference." *Id.* at 447. As a consequence, political parties no longer had any ability to "indicate their nominees on the ballot." *Id.* at 453 n.7. The Court characterized that feature of the law as "unexceptional," explaining that "*[t]he First Amendment does not give political parties a right to have their nominees designated as such on the ballot.*" *Id.* (emphasis added). And, as importantly, the Court stated that "[p]arties do not gain such a right simply because the State affords candidates the opportunity to indicate their party preference on the ballot." *Id.*

The jurisprudence of *Timmons* and *Washington State Grange* thus makes clear that even though a statute such as § 24.2-613(B) may prevent political parties from indicating on the ballot which local candidates are their nominees, it does not impose a constitutionally cognizable burden on those parties' associational rights because "[t]he First Amendment does not give political parties a right to have their nominees designated as such on the ballot." *Washington State Grange*, 552 U.S. at 453 n.7. Moreover, that jurisprudence similarly confirms that local candidates themselves have no First Amendment right to use the ballot "as [a] forum[] for political expression" in which to communicate to voters their status as a party's nominee. *Timmons*, 520 U.S. at 363.

The plaintiffs seem to accept much of this jurisprudence. They contend, however, in somewhat of a different vein, that they "suffer[ed] a detrimental effect on their associational rights [because] the Commonwealth of Virginia discriminate[d] against them and other local candidates by denying them a party identifier next to their names on

12

the ballot while requiring a party identifier on the ballot next to the names of party nominees for General Assembly, statewide[,] and federal offices." In making this argument, they rely on the Supreme Court's oft-stated recognition that a State's "important regulatory interests are generally sufficient to justify reasonable, *nondiscriminatory* restrictions," *Anderson*, 460 U.S. at 788 (emphasis added), and reason that "they have a First Amendment associational right to *nondiscriminatory* treatment when the government grants a privilege or benefit related to the election ballot." They argue that § 24.2-613(B) violates that nondiscrimination principle by treating them differently than federal, statewide, and General Assembly candidates.

The plaintiffs, however, fail to explain why the statute's different treatment of candidates based on the offices they seek imposes a burden on their right of association. Under the challenged provision, a Republican candidate for the U.S. Senate may receive a benefit from an identifier indicating that he or she is the Republican Party nominee, while a Republican candidate for county sheriff does not. The county sheriff candidate, however, is hardly affected by the fact that the Senate candidate has an identifier. The candidate for county sheriff is treated like every other candidate for that office, none of whom can have a party identifier under § 24.2-613(B). In that manner, the restriction on party identifiers does not burden the associational rights of any local candidate.

Of course, if a law gives *some* candidates for the Senate a party identifier, *but not other* candidates for the Senate, it would impose a burden on the associational rights of the candidates left unidentified, even though no candidate has an absolute right to be so identified. *See Rosen v. Brown*, 970 F.2d 169, 171, 174 (6th Cir. 1992) (invalidating an

13

Ohio law that provided a party identifier for candidates nominated by political parties for an office but that prohibited a nonparty candidate for that same office from being labeled as an "Independent"). But one can hardly conclude that a candidate for county sheriff is burdened by the different treatment afforded to a candidate for the Senate.

The plaintiffs might argue to the contrary that the presence of party identifiers next to the names of candidates for the Senate and the absence of such identifiers next to the names of candidates for county sheriff might be misleading as voters might incorrectly infer that none of the candidates for sheriff were nominated by a political party. But, as the district court noted, the Supreme Court found exactly this type of assumption regarding voter confusion insufficient to support a facial challenge to the election law at issue in *Washington State Grange*. *See* 552 U.S. at 454 ("[R]espondents' assertion that voters will misinterpret the party-preference designation is sheer speculation. . . . There is simply no basis to presume that a well-informed electorate will interpret a candidate's party-preference designation to mean that the candidate is the party's chosen nominee or representative or that the party associates with or approves of the candidate"). Similarly, the plaintiffs might argue that a party-nominated candidate for county sheriff is denied the "coattails" benefit of announcing his association with the same party that is identified as nominating a particular candidate for the Senate. Yet, not only have the plaintiffs failed to demonstrate any such benefit, but conveying such an associational message is not an entitlement they have in connection with the content of Virginia's official ballots. The plaintiffs would merely be arguing that the law prevents them from relaying the message that they too are party-nominated candidates. The First Amendment, however,

14

does not give candidates the right to use the ballot as a forum for political expression in which to communicate to voters their status as a party's nominee. *See Timmons*, 520 U.S. at 363.

While party identifiers do not appear on the official ballot for Virginia's local candidates, the candidates still have every other avenue by which to inform voters of this information. Political parties and their nominees are entirely free to publicize their association with each other and may even distribute sample "party" tickets on election day, as long as they do not do so within 40 feet of a polling place's entrance. *See* Va. Code Ann. § 24.2-604(A). Voters can also directly access this information by visiting the "What is on my Ballot?" section of the Virginia Department of Elections' website. Thus, if it is a burden on the associational rights of the parties, the nominees, or the voters not to have this information specifically on the ballot — which, it must be recognized, is not designed to be a public forum to convey political information — the burden is at most minimal. *See Ohio Council 8 Am. Fed'n of State, Cnty. & Mun. Employees, AFL-CIO v. Husted*, 814 F.3d 329, 338 (6th Cir. 2016) (upholding the constitutionality of an Ohio law that banned the use of party identifiers on general-election ballots for judicial candidates after concluding that the law "places at most only minimal burdens on the First and Fourteenth Amendment rights of political parties, judicial candidates, and voters in Ohio judicial elections").

In short, we conclude that plaintiffs' First Amendment associational rights are at most minimally burdened by the fact that federal, state, and General Assembly candidates have party identifiers placed with their names, whereas local candidates do not.

15

Assuming there is some minimal burden, we must, under the *Anderson-Burdick* analysis, then weigh that burden against the governmental interests offered by Virginia as justifications for § 24.2-613(B). Because we conclude that the burden is not "severe," Virginia's "asserted regulatory interests need only be 'sufficiently weighty to justify the limitation' imposed on [associational] rights." *Timmons*, 520 U.S. at 364 (quoting *Norman*, 502 U.S. at 288-89).

Virginia has articulated three governmental interests that it claims justify § 24.2-613(B)'s ban on including party identifiers with the names of candidates for local offices. The law, it claims, (1) reduces partisanship in local government; (2) promotes impartial local governance and public confidence in local government; and (3) broadens the pool of citizens who may, consistent with the Hatch Act, serve in local elected offices. While the plaintiffs "do not dispute the legitimacy" of those interests, they challenge whether § 24.2-613(B)'s restriction serves those interests.

With respect to the first two interests, which are closely related, Virginia argues that "[w]ithout restricting the freedom of any parties or candidates, [it] has structured the ballot to avoid emphasizing party affiliation above all other messages with respect to local office candidates," reasoning that "Virginia's distinction between local offices, on the one hand, and federal and State offices, on the other, . . . makes perfect sense" in light of "the different role of local and non-local office[s]." To this end, it notes that "States have a particular interest in reducing partisanship" — and thus to some degree enhancing both impartial local governance and the public perception of such — with respect to local elected offices like clerk of court and sheriff, as well as essential administrative positions,

16

including treasurer and revenue commissioner. And "[e]ven local offices that are more 'political' in nature, such as members of local governing bodies, have a different scope of authority under Virginia law, which supports a conclusion that 'federal, statewide, and General Assembly offices' unavoidably touch on national and highly partisan issues, but that local offices deal primarily with non-partisan issues of basic services and community management."

We agree that Virginia's interests in minimizing divisive partisanship in local government and in enhancing, to at least some degree, the public's confidence that the successful candidates will serve the local community as a whole are legitimate and support the form of its regulation in § 24.2-613(B). The plaintiffs argue, nonetheless, that "[i]f the Commonwealth were genuinely concerned about a negative effect of partisanship in local governmental offices, it would have legislated that all local offices must be nonpartisan, which it has not done." While that approach could indeed have been followed, the Constitution does not, of course, require States to "address all aspects of a problem in one fell swoop." *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1668 (2015). Rather, rational half measures can be justified. The plaintiffs also posit that Virginia has taken the wrong approach to further the interests it identifies because the lack of a party identifier on the ballot will actually incentivize local candidates and the parties that have nominated them to heighten their partisan activities "to alert voters to the party affiliation that is not permitted to be shown on the ballot." Whether any such risk is sufficient to outweigh the statute's benefits, however, is a legislative judgment for Virginia to make.

17

Virginia also proffers as a justification for § 24.2-613(B) that it broadens the pool of citizens eligible to run for local offices without violating the Hatch Act, which regulates the political activity of federal executive branch employees.

Although § 24.2-613(B) only marginally advances the ability of Virginians to seek local office without running afoul of the Hatch Act, this effect, albeit small, nonetheless helps justify the law. A federal employee covered by the Hatch Act "may not . . . run . . . as a candidate for election to a partisan political office." 5 U.S.C. § 7323(a)(3). The law defines a "partisan political office" to mean "any office for which any candidate is nominated or elected as representing" a national political party. *Id.* § 7322(2). But banning ballot identifiers still might not avoid triggering the Hatch Act's prohibitions. According to the U.S. Office of Special Counsel, even without the use of any party identifiers on the ballot, elections in which all candidates qualify by petition could nonetheless lose their status as nonpartisan if "partisan politics actually enter[s] a candidate's campaign." Moreover, some Virginia localities have been granted a partial administrative exemption to the Hatch Act. *See* 5 U.S.C. § 7325; 5 C.F.R. § 733.103.[1] Thus, Virginia's interest in permitting more citizens to serve in local government consistent with the Hatch Act has potential application only with respect to elected

---

[1] The Hatch Act provides that "[t]he Office of Personnel Management may prescribe regulations permitting employees" living in communities in and around the Washington, D.C., metropolitan area — including some political subdivisions in northern Virginia — to participate in certain local political activities that would otherwise be prohibited. 5 U.S.C. § 7325. Pursuant to that authority, federal employees living in designated localities may "[r]un as independent candidates for election to partisan political office in elections for local office in the municipality or political subdivision." 5 C.F.R. § 733.103(b)(1).

offices in Virginia localities that have not been granted an exemption and for which, by virtue of either state or local law, candidates can only qualify for the ballot by petition, as opposed to by party nomination. We therefore conclude that this interest is only marginally advanced by § 24.2-613(B).

Even so, Virginia and certain of its localities continue to make an effort to require a nonpartisan qualification process for certain local offices, and these laws could be severely undermined if candidates could nonetheless require the Commonwealth to designate their status as party nominees on the ballot. *See* Va. Code Ann. § 24.2-613(B) (providing that candidates who qualify for the ballot by petition are to be "identified by the term 'Independent,'" unless they "produc[e] sufficient and appropriate evidence of nomination by a 'recognized political party' to the State Board").

At bottom, we conclude that any burden that § 24.2-613(B) imposes on the right of association protected by the First and Fourteenth Amendments is outweighed by the important state interests advanced by the law. Therefore, we affirm the district court's judgment in favor of the defendants with respect to this claim.

## IV. Equal Protection Rights

The plaintiffs also contend that § 24.2-613(B) violates the Equal Protection Clause.[2] A lengthy discussion of this claim is not required. The plaintiffs properly

---

[2] We have previously applied the *Anderson-Burdick* analysis to consider equal-protection-based challenges to state election laws when such claims have been asserted in conjunction with claims under the First and Fourteenth Amendments. *See Libertarian Party*, 826 F.3d at 714, 716-17; *Pisano v. Strach*, 743 F.3d 927, 930, 934 (4th Cir. 2014).

concede, for the purposes of the Equal Protection Clause, that § 24.2-613(B)'s different treatment with respect to the use of party identifiers for federal, statewide, and General Assembly candidates, on the one hand, and for local candidates, on the other, must be upheld unless there is no rational basis to support it. Because § 24.2-613(B) is rationally related to legitimate state interests, as we discussed in our *Anderson-Burdick* analysis, we conclude *a fortiori* that it does not violate the Equal Protection Clause.

\* \* \*

In sum, we hold that when Virginia amended § 24.2-613(B) in 2000 to expand the categories of offices for which official ballots would include party identifiers while continuing to ban party identifiers for candidates for local offices, it did not violate the right to association protected by the First and Fourteenth Amendments or the Equal Protection Clause of the Fourteenth Amendment.

Accordingly, the judgment of the district court is

*AFFIRMED.*

---

Here, however, because of the manner in which the plaintiffs have presented their arguments and for analytical clarity, we find it useful to consider this claim separately.