Filed 10/27/21  Foster v. Ronco CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| DIANNE FOSTER et al., | C092805 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. S-CV-0045280) |
| RYAN RONCO, as County Clerk/Recorder/Registrar of Voters, etc., | |
| Defendant and Respondent. | |

Plaintiffs Dianne Foster and Virginia Valenzuela (plaintiffs) are the proponents of a local recall campaign against the members of the board of directors of the Foresthill Public Utility District (the district). To qualify the recall petitions for the ballot, plaintiffs needed to obtain at least 962 valid signatures within a 60-day circulation period beginning on March 18, 2020. On May 18, 2020, the last day of the circulation period, plaintiffs submitted four recall petitions, each containing just over 1,200 signatures. However, upon examination of the petitions, the local elections office determined that many of the signatures were invalid and, as a result, the recall petitions fell just short of the minimum number of valid signatures required to trigger an election.

1

Plaintiffs then filed a petition for writ of mandate seeking an order compelling the local elections official (defendant) to allow additional time for plaintiffs to gather signatures.  Plaintiffs argued that stay-at-home orders imposed in response to the COVID-19 pandemic prevented them from obtaining enough signatures within the statutory deadline, in violation of their First Amendment rights.  The trial court denied the writ petition.

In this appeal, plaintiffs, proceeding in propria persona, seek to reverse the superior court's judgment denying their petition for writ of mandate.  We conclude that the appeal is moot as to the director who subsequently was voted out of office, but otherwise affirm the judgment.

BACKGROUND LAW

"Recall is the power of the electors to remove an elective officer."  (Cal. Const., art. II, § 13.)  Although the California Constitution speaks of recall as a power reserved to the people, it grants the Legislature broad authority to enact laws governing the recall process.  (Cal. Const., art. II, §§ 16, 19; *Libertarian Party of California v. Eu* (1980) 28 Cal.3d 535, 540.)  The statutes governing recall elections are contained in section 11000 et seq. of the Elections Code.[1]  Sections 11200 through 11242 address the specific procedures governing the recall of local elective officers.  (See *Persky v. Bushey* (2018) 21 Cal.App.5th 810, 821.)

Under the statutory scheme, a recall is commenced by the service, filing, and publication/posting of a notice of intention to circulate a recall petition.  (§§ 11006, 11020-11022.)  In the case of a local officer, the notice is filed with the local elections official.  (§ 11021.)  Within seven days thereafter, the officer sought to be recalled may file an answer.  (§§ 11023-11024.)

---

[1]     Undesignated statutory references are to the Elections Code.

2

The proponents of the recall may not circulate the petition for signatures until the local elections official notifies them the form and wording of the petition meets statutory requirements. (§§ 11040-11043.5.) Once such approval is obtained, the amount of time proponents have to circulate the petition depends on the number of registered voters in the electoral jurisdiction. (§ 11220.) To qualify for the ballot, the petition must be signed by a specified percentage of the registered voters in the electoral jurisdiction, calculated as of the time of the last report of registration. (§ 11221.)

When a petition is presented for filing, the elections official must determine whether the number of signatures affixed to the petition, prima facie, equals or exceeds the minimum number of signatures required. (§ 11222.) If so, the petition is deemed filed as of that date. (§ 11222.) If not, the petition is void and no "further action" is taken. (§ 11222.)

After the petition is filed, the elections official has 30 (business) days to examine the petition and verify the signatures. (§ 11224.) If the number of valid signatures is greater than the required number, the elections official must certify the petition as sufficient. (*Ibid.*) If the number of valid signatures is less than the required number, the petition must be certified as insufficient and "no action shall be taken on it." (§ 11226; see also §§ 11224, 11225.) A failure to secure a sufficient number of signatures does not preclude the proponents from initiating another recall petition. (§§ 11225, subd. (g), 11300; *Moore v. City Council of Maywood* (1966) 244 Cal.App.2d 892, 896.)

BACKGROUND FACTS AND PROCEDURE

On February 25, 2020, plaintiffs filed and served a notice of intention to circulate petitions to recall four members of the district's board of directors. On March 18, 2020, the Placer County elections office approved the form of the petitions, allowing plaintiffs to begin circulating them. Based on the number of active registered voters in Foresthill, plaintiffs had 60 days, until May 18, 2020, to collect and submit 962 valid signatures for each of the four petitions.

3

Meanwhile, in early 2020, in response to the COVID-19 global pandemic, Governor Newsom and the California Department of Public Health (DPH) issued a series of orders aimed at slowing the spread of the virus.  Among them, on March 19, 2020, Governor Newsom issued a statewide "stay-at-home" order, which ordered all people living in California to stay at home, except for those needed to maintain critical infrastructure.  (Executive Order N-33-20 (Mar. 19, 2020) <https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf> [as of Oct. 25, 2021], archived at <https://perma.cc/8J44-47H6>.)  The stay-at-home restrictions remained in place through early May 2020, when California announced a four-stage plan to gradually ease restrictions and reopen lower-risk businesses, subject to mandatory physical distancing measures.  (Executive Order N-60-20 (May 4, 2020) <https://www.gov.ca.gov/wp-content/uploads/2020/05/5.4.20-EO-N-60-20.pdf> [as of Oct. 25, 2021], archived at <https://perma.cc/QF62-7ERX>; DPH Order (May 7, 2020) <https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%205-7-2020.pdf> [as of Oct. 25, 2021], archived at <https://perma.cc/6A62-GUYA>.)  Since then, the state, counties, and localities have implemented a variety of measures—intensifying or diminishing restrictions—in attempting to strike the proper balance between public health, economic growth, and activities.  (See, e.g., DPH Order (Aug. 28, 2020) <https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/8-28-20_Order-Plan-Reducing-COVID19-Adjusting-Permitted-Sectors-Signed.pdf> [as of Oct. 25, 2021], archived at <https://perma.cc/U24P-GTVL>.)[2]

---

[2]     On our own motion, we take judicial notice of the March 19, 2020 Executive Order N-33-20; the May 4, 2020 Executive Order N-60-20; the May 7, 2020 DPH Order; and the August 28, 2020 DPH Order.  (Evid. Code, § 452.)

In March or April 2020, plaintiffs contacted the Secretary of State's office and requested that the deadline to submit signatures be extended or, alternatively, that the required number of signatures be reduced. The Secretary of State's office informed plaintiffs that it only oversees statewide recalls, and that plaintiffs' local elections official is responsible for local recall petitions.

Although plaintiffs claim the local elections official would not grant an extension without Secretary of State authorization, there is nothing in the record showing that plaintiffs ever requested an extension from defendant. Plaintiffs instead apparently focused their efforts on trying to obtain the required number of signatures. From March through May 2020, the proponents circulated the recall petition, collecting between 1,215 and 1,224 signatures for each petition.

On May 18, 2020, the proponents submitted the signatures they collected to the Placer County elections office for verification. On June 30, 2020, the proponents were notified that none of the petitions contained enough valid signatures (962) to trigger a recall election. The petitions were determined to be between 14 and 52 signatures short of the minimum number required. Based on the examination results, defendant certified each petition as insufficient.

On July 28, 2020, plaintiffs filed a writ petition in the Sacramento County Superior Court. On July 31, the court set the matter for hearing on the merits on August 6, 2020. On August 3, 2020, after reviewing plaintiffs' opening memorandum of points and authorities, the trial court vacated the hearing based on concerns about improper venue.

On August 11, 2020, plaintiffs filed a second petition for a writ of mandate (hereinafter, the "writ petition"), this time in the Placer County Superior Court.[3] The

---

[3] The writ petition failed to name the four individual board members as real parties in interest. Because we deny this appeal on other grounds, we find it unnecessary to

5

allegations of the writ petition were virtually identical to those in the Sacramento action, except that plaintiffs (1) removed the Secretary of State as a named party-respondent, and (2) deleted the previously referenced August 7, 2020 deadline to have the petition included in the ballot for the November 2020 election.

The petition contained two causes of action, alleging that section 9014, subdivision (b), and section 11042, subdivision (b), are unconstitutional as applied in light of the COVID-19 stay-at-home orders. Plaintiffs sought a peremptory writ of mandate compelling defendant either to accept the signatures submitted as sufficient to qualify the petitions for a recall election, or to allow the proponents an "additional 2-week extension"—presumably from the date of judgment and not the May 18, 2020 statutory deadline—to gather and submit additional signatures.

The writ petition was set for hearing on September 10, 2020. On September 1, 2020, defendant filed an opposition to the writ petition. On September 3, 2020, plaintiffs filed a supporting memorandum, but the court rejected it as untimely.[4]

On September 10, 2020, after hearing oral argument, the trial court issued an (unsigned) memorandum opinion denying the writ petition. The trial court began by characterizing the writ petition as a "confusing hodge-podge," addressing provisions of the Elections Code "which are clearly inapplicable to the relief" sought. The court noted that section 9014, subdivision (b) deals with proposed initiative or referendum measures, not recall petitions, and that section 11042, subdivision (b) deals with the process to approve the form and content of a recall petition before circulation. Thus, the court

consider whether the board members were indispensable parties. (See *Sonoma County Nuclear Free Zone '86 v. Superior Court* (1987) 189 Cal.App.3d 167, 173; *Tracy Press, Inc. v. Superior Court* (2008) 164 Cal.App.4th 1290, 1297.)

[4] Although plaintiffs refer to the September 3 memorandum in their appellate brief, they do not challenge the trial court's refusal to consider it.

6

denied the specific relief requested in the first and second causes of action of the writ petition.

Nevertheless, the court concluded that the gravamen of the writ petition was plaintiffs' claim that the statewide stay-at-home orders prevented the proponents from gathering enough valid signatures to qualify their petitions for the November 2020 ballot. The trial court considered and rejected this claim on the merits. The court explained: "From their own allegations, it is evident [plaintiffs] were able to obtain more than the required number of signatures, directly contradicting their assertions that the [COVID-19 restrictions] impeded their ability to obtain signatures for the recall petitions." According to the court, "[plaintiffs] simply came up short," and "ran out of time" to verify the sufficiency of the signatures before filing the petitions. Thus, the court ruled that plaintiffs failed to make a sufficient showing that they were prevented from obtaining the required number of signatures due to the state's COVID-19 restrictions. Further, even if there was merit to their substantive claim, the court was persuaded that granting the requested writ relief would substantially interfere with the conduct of the November 2020 election, in contravention of section 13314, subdivision (a)(2).

On October 6, 2020, plaintiffs filed a premature notice of appeal.[5] On October 8, 2020, the court entered its judgment denying the writ petition, incorporating its prior written decision as an exhibit.

---

[5] We have exercised our discretion under California Rules of Court, rule 8.104(d)(2), to treat the notice of appeal as having been filed immediately after the entry of judgment.

## DISCUSSION

## I

### *Mootness*

The trial court construed the writ petition as seeking to qualify the recall petitions for the November 2020 election. Thus, as a preliminary matter, we consider whether this appeal is moot due to the completion of that election.

A case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief. (*Corrales v. Bradstreet* (2007) 153 Cal.App.4th 33, 46.) Here, although plaintiffs' stated goal was to qualify the recall petitions for the November 2020 election, the relief requested in their writ petition was not tied to that election. Under the Elections Code, the time for holding a recall election is triggered by a finding of sufficiency and the corresponding issuance of an order scheduling a recall election. (§§ 11225, 11240-11242.) Once such an order issues, the recall election must be held "not less than 88, nor more than 125, days after the issuance of the order." (§ 11242.) *If* a regular or special election is to be held within this time period, the statute provides that the recall election must be held "on the same day[ ] and consolidated with" that election. (§ 11242.) Otherwise, the governing body must call a special election. (See § 12001; *Baroldi v. Denni* (1961) 197 Cal.App.2d 472, 477.)

In this case, because the petitions were found to be insufficient, there never was an order for an election. Thus, the statutory requirements governing the timing of the election, which apply only after the issuance of such an order, never applied. It follows that the petitions were not required to qualify for the November 2020 ballot and, therefore, the passage of the November 2020 election did not (by itself) render this appeal moot.

Nonetheless, plaintiffs brought to our attention in their opening brief that board member Linda Cholcher was voted out of office at the November 2020 election. Since board member Cholcher no longer holds office, she obviously cannot still be recalled.

8

Thus, as to her, the appeal is moot.  (*Granger v. Legislative Body of Escondido* (1936) 15 Cal.App.2d 557, 558.)  We now turn to the merits of the writ petition, beginning with our standard of review.

II

*Standard of Review*

In this appeal, plaintiffs seek to reverse the trial court's judgment denying their petition for a traditional writ of mandate.  A traditional writ of mandate lies to compel the performance of a duty required by law.  (Code Civ. Proc., § 1085.)  To obtain a writ of mandate under Code of Civil Procedure section 1085, a plaintiff must show (1) a clear, present, and usually ministerial duty on the part of the defendant to act, and (2) a correlative clear, present, and beneficial right in the plaintiff to the performance of that duty.  (*Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 507.)

On appeal from a trial court's decision denying a traditional writ of mandate, we review the record to determine whether the trial court's findings and judgment are supported by substantial evidence.  (*Howard Jarvis Taxpayers Assn. v. Amador Water Agency* (2019) 36 Cal.App.5th 279, 291.)  However, to the extent resolution of the issues depends on the interpretation of a statute or constitutional provision, or application of the law to undisputed facts, we decide those issues de novo.  (*Ibid.*; *Corrales v. Bradstreet, supra*, 153 Cal.App.4th at pp. 47-48.)

A party challenging the constitutionality of a statute carries a heavy burden.  (*City of Walnut Creek v. Silveira* (1957) 47 Cal.2d 804, 811.)  There is a strong presumption in favor of the constitutionality of a statute and any doubts must be resolved in favor of the Legislature's action.  (*Fox v. Federated Department Stores, Inc.* (1979) 94 Cal.App.3d 867, 880; *In re Ricky H.* (1970) 2 Cal.3d 513, 519 [courts will presume a statute is valid unless unconstitutionality clearly, positively, and unmistakably appears].)

9

III

*Application of the 60-day Circulation Deadline*

As discussed above, to qualify the recall petitions for the ballot, the proponents were required to obtain at least 962 valid signatures within the 60-day circulation period beginning on March 18, 2020.  (§§ 11220, subd. (a)(2), 11221, subd. (a)(2).)  Plaintiffs contend that the 60-day circulation deadline was unconstitutional in light of the stay-at-home restrictions imposed in response to the COVID-19 pandemic.  We conclude, as did the trial court below, that plaintiffs have failed to carry their burden to demonstrate the circulation deadline was unconstitutional as applied.[6]

An as-applied challenge to the constitutional validity of a statute "contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right."  (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)  The result of a successful as-applied challenge is not invalidation of the statute as a whole, but an order enjoining the specific unlawful application.  (*California Family Bioethics Council, LLC v. California Institute for Regenerative Medicine* (2007) 147 Cal.App.4th 1319, 1339.)

The statute at issue in this case is section 11220, subdivision (a), which imposed a 60-day deadline for the proponents to gather enough valid signatures to trigger a recall election.  (§ 11220, subd. (a)(2).)  Plaintiffs contend application of the 60-day deadline, in conjunction with the state's stay-at-home restrictions, effectively prevented them from

---

[6]     It bears repeating that the two causes of action alleged in the complaint challenged statutes wholly unrelated to the 60-day circulation deadline.  Nevertheless, since the validity of the 60-day circulation deadline was litigated below, we conclude the issue was preserved for appeal.

obtaining the requisite minimum number of signatures, thereby violating their First Amendment rights.

As a general rule, the administration of elections is a matter that the United States Constitution largely entrusts to the states. (*Kusper v. Pontikes* (1973) 414 U.S. 51, 57 [38 L.Ed.2d 260, 266].) " '[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.' " (*Feldman v. Reagan* (9th Cir. 2016) 843 F.3d 366, 386.) However, as in all other areas of governmental action, the exercise of such power is subject to constitutional limitations. (*Gould v. Grubb* (1975) 14 Cal.3d 661, 669.)

When analyzing whether a state election law impermissibly impinges on rights protected by the First Amendment, we apply the framework derived from the United States Supreme Court's decisions in *Anderson v. Celebrezze* (1983) 460 U.S. 780 [75 L.Ed.2d 547] and *Burdick v. Takushi* (1992) 504 U.S. 428 [119 L.Ed.2d 245]. (*Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 174 (*Edelstein*); accord, *Miller v. Thurston* (8th Cir. 2020) 967 F.3d 727, 736 (*Miller*); *Voting for America, Inc. v. Steen* (5th Cir. 2013) 732 F.3d 382, 387-388 (*Steen*); *Marcellus v. Virginia State Board of Elections* (4th Cir. 2017) 849 F.3d 169, 175; *SAM Party of New York v. Kosinski* (2d Cir. 2021) 987 F.3d 267, 274.)

Under the *Anderson-Burdick* framework, the rigorousness of our inquiry depends upon the extent to which the challenged election law burdens the First Amendment rights that the plaintiff seeks to vindicate. (*Edelstein, supra*, 29 Cal.4th at p. 174.) We must " 'weigh "the character and magnitude of the asserted injury to the rights . . ." against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." ' " (*Steen, supra*, 732 F.3d at p. 388.) State rules that impose " 'severe burdens on the plaintiffs' rights,' [ ] must be 'narrowly tailored and

11

advance a compelling state interest.' [Citation.] 'Lesser burdens, however, trigger less exacting review, and a State's "important regulatory interests" will usually be enough to justify "reasonable, nondiscriminatory restrictions." ' " (*Miller, supra*, 967 F.3d at p. 736; accord, *Edelstein*, at p. 174; *Steen*, at p. 388; *SAM Party of New York v. Kosinski, supra*, 987 F.3d at p. 274.)

The difficulty here is that plaintiffs' brief does not even acknowledge this standard, let alone apply it. There is no discussion of the severity of the alleged burden on their First Amendment rights or the level of scrutiny that should apply. Nor does the brief make any effort to weigh the alleged burden on plaintiffs' First Amendment rights against the state's legitimate regulatory interests. And while the brief refers to several federal decisions cited in their writ petition, the brief generally fails to discuss the facts of those cases or explain how they apply. Instead, plaintiffs simply assert, in a conclusory fashion, that all the cited cases share the " 'common thread' " of finding state petitioning requirements to be unconstitutional in the context of COVID-19 restrictions.

Such generalized claims, unsupported by meaningful analysis and citation to authority, are inadequate to carry an appellant's burden to establish error. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.) Thus, we are well within our authority to deem the contention forfeited. (*Allen, supra*, at p. 52.)

Nonetheless, even if considered on the merits, plaintiffs' claim fails. As defendant noted in opposing the writ petition, none of the cases cited by plaintiffs are factually analogous. In those cases, the plaintiffs obtained orders enjoining statutory signature filing deadlines by showing the deadlines, in conjunction with stay-at-home restrictions, would unconstitutionally impair the ability to collect the minimum number of signatures

necessary to qualify for the ballot.[7] (*Fair Maps Nevada v. Cegavske* (D.Nev. 2020) 463 F.Supp.3d 1123, 1130; *Esshaki v. Whitmer* (E.D.Mich. 2020) 455 F.Supp.3d 367, 369-371, 383-384, stay granted in part by *Esshaki v. Whitmer* (6th Cir. 2020) 813 Fed. Appx. 170, 171; *Thompson v. DeWine* (S.D.Ohio 2020) 461 F.Supp.3d 712, 717-718, 735-736, revd. by *Thompson v. DeWine* (6th Cir. 2020) 976 F.3d 610, 620.)

Here, in contrast, plaintiffs did *not* seek to enjoin the 60-day deadline to secure additional time to gather signatures before the deadline. Plaintiffs instead gambled that they would be able to obtain the requisite number of signatures notwithstanding the effects of the stay-at-home orders. As it turns out, plaintiffs *were able* to collect more than the required minimum number of signatures by the May 18 deadline. It was only later—after being notified they did not have enough *valid* signatures—that plaintiffs sought a belated "extension" of the statutory deadline. Thus, the trial court reasonably concluded plaintiffs failed to show that the COVID-19 restrictions unconstitutionally burdened their First Amendment rights.

Plaintiffs accuse the trial court of failing to adequately consider how the stay-at-home restrictions affected their ability to obtain "valid" signatures. We see no error. Although we acknowledge the stay-at-home orders likely made obtaining valid signatures more difficult, this by itself is not sufficient to prove a First Amendment violation. (See, e.g., *Miller, supra*, 967 F.3d at p. 738.) That plaintiffs were able to collect approximately 125 percent of the required minimum number of signatures, and 95 to 99 percent of the

---

[7]    Plaintiffs also cite *Miller v. Thurston* (W.D.Ark. 2020) 462 F.Supp.3d 930, 934-937, but that court *declined* to enjoin the signature filing deadline, granting an injunction only as to in-person signature and notarization requirements, which itself was reversed in *Miller, supra*, 967 F.3d at page 741. Thus, *Miller v. Thurston* is unavailing to plaintiffs. In their appellate brief, plaintiffs also cite a Sacramento Superior Court opinion, *Macarro v. Padilla* (Super. Ct. Sac. County, 2020, No. 34-2020-80003404). But a trial court opinion in an unrelated case has no precedential value. (*Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761; *In re Molz* (2005) 127 Cal.App.4th 836, 845.)

required minimum number of valid signatures, supports the trial court's finding that plaintiffs' signature gathering efforts were not unconstitutionally impaired.

This is not to say that plaintiffs could not have obtained an extension if they had timely applied for one before the circulation deadline expired. However, plaintiffs made a calculated decision to wait to file this action until after the signatures were submitted. They must bear the consequences of that decision.

Under the Elections Code, once a recall petition is determined to contain less than the required number of valid signatures, the elections official has a ministerial duty to certify it as insufficient and to take no further action. (§§ 11222, subd. (b), 11224, subd. (a), 11225, subd. (g), 11226.) There is no provision in the election laws allowing a proponent to file supplemental signatures after a recall petition is found to be insufficient. (§§ 11224, subd. (a), 11225, subds. (c) & (g), 11226; see *Hartman v. Kenyon* (1991) 227 Cal.App.3d 413, 420.) Thus, even if the circulation deadline could somehow be extended at this late date—a dubious proposition—it would be unavailing to plaintiffs since the petitions already were certified as insufficient. (*Wilcox v. Enstad* (1981) 122 Cal.App.3d 641, 648.) While we recognize that election statutes should be liberally construed to enable citizens to exercise their rights of recall, "recognition of this policy 'does not allow the courts to enlarge the scope of a procedural statute where the statutory provisions are clear.' " (*Hartman, supra*, at p. 420; accord, *Wilcox, supra*, at pp. 651-652, 655.) Nothing in this case convinces us that these procedural restrictions are unconstitutional. Accordingly, we affirm.

14

DISPOSITION

The appeal is dismissed as moot as to the petition to recall board member Cholcher.  Otherwise, the judgment denying the writ petition is affirmed.  Defendant shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                           _____KRAUSE_____ , J.


We concur:


_____HULL_____ , Acting P. J.


_____RENNER_____ , J.

15